Rojas v Romanoff (2020 NY Slip Op 04237)





Rojas v Romanoff


2020 NY Slip Op 04237


Decided on July 23, 2020


Appellate Division, First Department


Renwick, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 23, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, Presiding Justice, Dianne T. Renwick, Troy K. Webber, Ellen Gesmer, Justices. 


11536 

[*1]Angel Rojas, Plaintiff-Respondent,
v
Richard Romanoff, et al., Defendants-Appellants.



Defendants appeal from an order of the Supreme Court, Bronx County (John R. Higgitt, J.), entered September 20, 2019, which denied defendants' motion to dismiss the complaint.




Hollander Legal Group, PC, Melville (Allan S. Hollander of counsel), for appellants.
Goldstein & Handwerker, LLP, New York (Jason Levine of counsel), for respondent.



RENWICK, J.


This personal injury action raises long established principles of res judicata and collateral estoppel, more commonly referred to, respectively, as claim preclusion and issue
preclusion. Specifically, this appeal concerns the preclusive effect on claims and issues in a personal injury action of a prior first-party, no-fault benefits action [FN1]. In the present action, plaintiff sues defendants, the owner and driver of a motor vehicle that allegedly collided with [*2]plaintiff pedestrian. In the prior action, Nationwide Agribusiness Insurance Company, defendants' (driver/owner) insurer, brought a declaratory judgment action against plaintiff and, by default judgment, obtained a declaration that it was not obligated to pay no-fault benefits to the claimant, plaintiff here, under the policy covering defendants' motor vehicle. In the declaratory judgment action, Nationwide claimed, among other things, that the injuries sustained by plaintiff did not come from the use or operation of a Nationwide insured vehicle and that plaintiff's injuries were caused while he was operating a motorcycle, which is not covered by no-fault law [FN2]. Those issues were never litigated, because the declaratory judgment was granted on default.
We affirm the order of Supreme Court that denied defendants' motion to dismiss the complaint on the grounds of collateral estoppel and res judicata. We hold that neither claim preclusion nor issue preclusion applies to bar this personal injury action. First, the default nature of the judgment rendered in the prior declaratory judgment action prevents application of issue preclusion. Second, claim preclusion also does not apply because both actions did not involve the same parties or their parties in privity. As fully explained below, "same parties" means the same adversarial parties, and plaintiff and defendants were not adversaries in the prior litigation. As to claim preclusion, the only adversaries in the prior action were plaintiff (as a defendant) and defendants' (driver's/owner's) insurer, Nationwide (as the plaintiff) with whom defendants (driver/owner) were not in privity in the no-fault benefits dispute.
Factual and Procedural Background
This personal injury action was commenced by plaintiff Angel Rojas against defendants Richard Romanoff and Nebraskaland, Inc. to recover damages for personal injuries sustained during a purported motor vehicle accident that occurred on September 15, 2016. Plaintiff claims that he was "walking" his motorcycle across the street when he was struck by a vehicle being driven by defendant Richard Romanoff and owned by defendant Nebraskaland, Inc. Defendants, however, maintain that plaintiff fell off his motorcycle while performing wheelies, and that Romanoff slowly drove over one of the wheels of plaintiff's motorcycle, but did not actually strike plaintiff. Allegedly, plaintiff and others then collected the motorcycle and fled the scene, while Romanoff remained and called the police. A group of males allegedly then began to gather and bang on his car, causing Romanoff to flee out of fear. The group pursued Romanoff past a security entrance at the Hunts Point Meat Market and blocked him from leaving before continuing to attack and damage his vehicle.
After plaintiff filed a claim for no-fault benefits from Nationwide, defendants' insurer, Nationwide commenced a declaratory judgment action in Supreme Court, Nassau County, seeking a declaration, among other things, that: plaintiff was not an "eligible injured person," and had made material misrepresentations of fact and false/fraudulent statements in connection with his claim, and therefore was not entitled to no-fault benefits from Nationwide; "the injuries sustained by [plaintiff] did not arise from the use or operation of a NATIONWIDE insured vehicle"; plaintiff's "injuries were caused while he was operating a motorcycle" and Nationwide was not obligated to pay no-fault benefits, or afford bodily injury coverage, to plaintiff. Defendants here (Nationwide's insureds, driver/owner) were also named as nominal defendants in the declaratory judgment action. However, Nationwide did not seek any specific relief or declaration against its insureds regarding its duties under the motor vehicle policy to defend and indemnify the owner and driver of the insured vehicle.
Plaintiff defaulted in appearing in the declaratory judgment action, and, as a result, a default judgment was entered on January 24, 2018, which declared that Nationwide was not obligated either to pay no-fault benefits or to afford any bodily injury coverage to plaintiff for personal injuries arising from the September 15, 2016 incident. After plaintiff commenced this action in Supreme Court, Bronx County in April 2019, defendants moved pre-answer to dismiss. In support, they argued that the default judgment in the Nassau County declaratory judgment action collaterally estopped plaintiff and barred plaintiff by res judicata from relitigating whether defendants were liable for any injuries that plaintiff may have allegedly suffered. In opposition, plaintiff argued that he did not fully litigate the issues raised in the declaratory judgment action, since the judgment in that case was entered on default. Supreme Court denied defendants' motion. It held that the default judgment in the Nassau County declaratory judgment action did not collaterally estop plaintiff in this action because plaintiff did not willfully or deliberately refuse to participate in that action. Nor was plaintiff barred by res judicata since the judgment entered in the Nassau County declaratory judgment action was entered on his default, and the issues in that action were not the same as those raised in the instant case.
DiscussionConceptually, "res judicata" is an umbrella term encompassing both claim preclusion and issue preclusion, which are described as two separate aspects of an overarching doctrine (see Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485 [1981]; Cromwell v County of Sac, 94 US 351, 352-53 [1876]; 73A NY Jur 2d, Judgments § 428; Restatement (Second) of Judgments, Volume 1, § 24 [1982]). Claim preclusion, the primary aspect of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties (O'Brien v City of Syracuse, 54 NY2d 353 [1981]; Lodal, Inc. v Home Ins. Co., 309 AD2d 634, 634 [1st Dept 2003]); issue preclusion, the secondary aspect, historically called collateral estoppel, pertains to the bar on relitigating issues that were argued and decided in the first suit (Buechel v Bain, 97 NY2d 295, 303 [2001] [citation omitted], cert denied 535 US 1096 [2002]).
It is important to distinguish these two types of preclusion, because they have different requirements. Claim preclusion prevents relitigation between the same parties, or those in privity with them, of a cause of action arising out of the same transaction or series of transactions that either were raised or could have been raised in the prior proceeding (see Landau, P.C. v LaRossa, Mitchell & Ross, 11 NY3d 8, 12 [2008]; Matter of Josey v Goord, 9 NY3d 386, 389 [2007]; Matter of Hunter, 4 NY3d 260, 269 [2005]; O'Brien v Syracuse, 54 NY2d at 357; Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485 [1979]). As the Court of Appeals has stressed, this "identity" requirement is a "linchpin of res judicata," which applies "only when a claim between the parties has been previously brought to a final conclusion'" (City of New York v Welsbach Elec. Corp., 9 NY3d 124, 127 [2007] [emphasis omitted], quoting Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347 [1999]; see also Blue Sky, LLC v Jerry's Self Storage, [*3]LLC, 145 AD3d 945 [2d Dept 2016]). Stated differently, the "doctrine of res judicata only bars additional actions between the same parties on the same claims based upon the same harm" (Employers' Fire Ins. Co. v Brookner, 47 AD3d 754, 756 [2d Dept 2008] [internal quotation marks omitted]).
Issue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action (Buechel v Bain, 97 NY2d at 303; Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]). Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action (Buechel v Bain, 97 NY2d at 303-304). There is a limit to the reach of issue preclusion, however. In accordance with due process, it can be asserted only against a party to the first lawsuit, or one in privity with a party (see Arizona v California, 460 US 605, 619, 103 SCt 1382 [1983]; People v Guerra, 65 NY2d 60, 63 [1985]; Sales v State Farm Fire & Cas. Co., 902 F2d 933, 936 [11th Cir 1990]).
Issue preclusion differs from claim preclusion in two ways. First, issue preclusion does not bar entire causes of action. Instead, it prevents relitigation of previously decided issues (Buechel v Bain, 97 NY2d at 303). Second, unlike claim preclusion, issue preclusion can be raised by one who was not a party or in privity in the first suit. Only the party against whom the doctrine is invoked must be bound by the prior proceeding. Thus, issue preclusion applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) the issue was necessary to support a valid and final judgment on merits (Conason v Megan Holding, LLC, 25 NY3d 1, 17 [2015]).
Initially, we find that the default nature of the judgment rendered in the prior declaratory judgment action prevents application of issue preclusion to the instant personal injury action. "An issue is not actually litigated" for collateral estoppel purposes "if, for example, there has been a default" (Kaufman v Eli Lilly & Co., 65 NY2d 449, 456-457 [1985]). Accordingly, "[b]ecause the judgment taken against [plaintiff here] was entered on default, the issue of liability [including whether plaintiff's injuries were causally related to a motor vehicle accident involving defendant driver] was not actually litigated in the [declaratory judgment] action and [any] finding of liability therefore has no collateral estoppel effect" (Pigliavento v Tyler Equip. Corp., 233 AD2d 810, 811 [3d Dept 1996]; see Matter of American Tr. Ins. Co. v Hossain, 100 AD3d 421, 421, lv denied 20 NY3d 859 [2013] [1st Dept 2012] [default judgment obtained by insurer in Nassau County Supreme Court did not have collateral estoppel effect]).
In addition, we find that the doctrine of claim preclusion does not bar plaintiff from bringing this personal injury action. Claim preclusion cannot apply here, because plaintiff and defendants are litigating a claim against each other for the first time. As discussed above, in order for the doctrine of claim preclusion to apply, there must be "identity of parties." Under claim preclusion, both actions must involve the same parties or their privies. The same parties means the same adversarial parties. Generally, codefendants are not adversaries for the purposes of res judicata, unless a codefendant files a cross claim against the other (see City of New York v Welsbach Electric Corp. (9 NY3d 124 [2007] [res judicata did not bar the second action because the parties in the second action were not adversaries in the prior action, where the City, as a defendant in the prior action, had not elected to make a cross claim against its codefendants, the contractor]; see also Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347 [1999] ["Under res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action"]). Accordingly, the character of a party, as adverse or otherwise, is to be determined not by his position upon the docket, or in the title of the case, but by reference to his relations to the other parties, as shown by his interest in the case. In other words, claim preclusion never arises between codefendants in a prior action unless they represented adverse interests in the prior action as to a claim that was in fact litigated between them (see City of New [*4]York v Welsbach Electric Corp. (9 NY3d at 125; Parker v Blauvelt Volunteer Fire Co., 93 NY2d at 347).
Here, in the prior declaratory judgment action, plaintiff and defendants (driver/owner) never litigated any claims against each other, as they were never adversaries in the no-fault declaratory judgment action. In fact, although defendants here were named as parties to the first action by their insurer, Nationwide, they were merely nominal parties who did not participate in the first action, nor did the insurance carrier or plaintiff here seek any relief against them. Under the circumstances, whether the two lawsuits potentially involved similar issues, that is, the causal connection of defendants' vehicle to plaintiff's injuries, is beside the point. Claim preclusion does not bar plaintiff from suing defendants in this personal injury action, because defendants are not the "same parties" who prosecuted the prior action against plaintiff.
Requiring parties to have previously held adversarial positions in order to satisfy the "same parties" element of claim preclusion is illustrated by the Court of Appeals' decision in Welsbach Electric Corp. (9 NY3d 124). In Welsbach, the Court of Appeals held that res judicata did not bar the City of New York from suing the manufacturer of a traffic signal for contribution, or indemnification to recover a payment on a judgment that had been entered against the City. In Welsbach, a two-car collision occurred at a New York City intersection controlled by a traffic signal maintained by Welsbach, a contractor. One of the drivers and his passenger sued the other driver, Welsbach, and the City. As against Welsbach and the City, the plaintiffs alleged that their injuries resulted from the negligent repair and maintenance of the traffic signal, because it gave both drivers a green light. Although Welsbach asserted cross claims against the City and the other defendants, the City never asserted a cross claim against Welsbach.
The trial court later granted summary judgment on all claims and cross claims against Welsbach, holding that Welsbach owed no duty to members of the public to perform its contract (9 NY3d at 126). The City never appealed from the judgment dismissing the claims asserted against Welsbach. Following a trial on the remaining claims, the jury found the City liable for the plaintiffs' injuries because the traffic signal gave both drivers a green light. After satisfying the judgment, the City sued Welsbach for indemnification or contribution, alleging that Welsbach negligently maintained the traffic signal. Welsbach moved for summary judgment on res judicata and collateral estoppel grounds. Supreme Court and this Court reached contrary conclusions on Welsbach's motion. The Court of Appeals, however, unanimously held that res judicata was inapplicable (id. at 127-28). Since the City never asserted a claim against Welsbach in the earlier liability action, the Court reasoned, the City and Welsbach were not "actually litigating successive actions against each other," barring the application of res judicata. In other words, the Court of Appeals ruled that, because the City had not made any claims against Welsbach in the initial case, the City's claim had not been brought to a conclusion in the prior action so as to trigger claim preclusion (id.).
Nor can defendants satisfy the "same parties" requirement of claim preclusion by arguing that they were in privity to a party in the prior action, their insurer Nationwide, which was an adverse party to plaintiff in the prior action. Under the res judicata doctrine, "the concept of privity requires a flexible analysis of the facts and circumstances of the actual relationship between the party and nonparty in the prior litigation" (Syncora Guarantee Inc. v J.P. Morgan Securities LLC, 110 AD3d 87, 93 [1st Dept 2013]; see also D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990] [noting that privity "is an amorphous concept not easy of application"]). "The statement that a person is bound by or has the benefit of a judgment as a privy is a short method of stating that under the circumstances and for the purpose of the case at hand he is bound by and entitled to the benefits of all or some of the rules of res judicata by way of merger, bar or collateral estoppel" (Restatement [First] of Judgments § 83, Comments a). Thus, privity of a nonparty with a party of a prior litigation is determined for res judicata [*5]purposes (similarly to claim and issue preclusion), by considering whether the circumstances of the actual relationship, the mutuality of interests, and the manner in which the nonparty's interests were represented in the earlier litigation established a functional representation such that the nonparty may be thought to have had a vicarious day in court (D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990]; see also Syncora Guarantee Inc. v J.P. Morgan Securities LLC, 110 AD3d 87 [1st Dept 2013]; Restatement [Second] of Judgments, Introductory Note, ch 4 at 344). In other words, "the doctrine extends to persons who were not parties to the previous action but who were connected with it to such an extent that they are treated as if they were parties" (All Terrain Props, Inc. v Hoy, 265 AD2d 87, 93 [1st Dept 2000] [internal quotation marks omitted]; Failla v Nationwide Ins. Co., 267 AD2d 860, 862-863 [3d Dept 1999]).
Here, in the prior declaratory judgment action, there was no privity between defendants and their insurer, Nationwide, because the first proceeding involved a no-fault benefits dispute pursuant to the Insurance Law where defendants' (driver's/owner's) liability was not at stake. In determining whether privity existed, courts have distinguished between proceedings such as the prior proceeding in this case, where only the insurer's liability for first-party payments under the state's no-fault scheme was at issue, and other types of proceedings implicating the indemnitor and indemnitee relationship between insurer and insured. In the latter circumstance, because both the liability insurer and its insured defendant whom it must indemnify are necessarily interested in obtaining a favorable outcome in all claims, or proceedings, where the extent of the insured's liability is in issue, the courts in such cases have repeatedly found privity between the liability insurer and its insured (see Hinchey v Sellers, 7 NY2d 287, 295 [1959]; Bonde v General Security Ins. Co. of Canada, 55 Misc 2d 588 [Sup Ct, Albany County 1967]; Fadden v Cambridge Mut. Fire Ins. Co., 51 Misc 2d 858 [Sup Ct, Albany County [1966], affd 27 AD2d 487 [3d Dept 1967]). Thus, for example, an insurer cannot escape the possible application of the res judicata doctrine to a personal injury action rendered against its insured; by virtue of an indemnitor-indemnitee relationship, the insurer is in privity with a defendant insured in the original action (Hinchey v Sellers, 7 NY2d at 295).
Conversely, courts have found that the relationship between the insured and the insurer as payor of no-fault benefits is not that of indemnitor-indemnitee. The insurer in its contract with the insured agrees to make direct payments of no-fault benefits to certain classes of injured claimants found to be qualified under the Insurance Law (see Insurance Law, article 51). New York's "no-fault legislation reflects a public policy designed to make the insurer of first-party benefits absorb the economic impact of loss without resort to reimbursement from its insured or, by subrogation, from the tortfeasor" (Country Wide Ins. Co. v Osathanugrah, 94 AD2d 513, 514-515 [1st Dept 1983], affd 62 NY2d 875 [1974]. Thus, "it is the responsibility of the insurer, not the insured to make the first-party payments, and the liability for such payments is not dependent upon or derivative from any liability of the insured" (Baldwin v Brooks, 83 AD2d 85, 88—89 [4th Dept 1981]). If a claim for first party benefits is granted, the insurer is contractually liable for the payments, not the insured, and it is the insurer whom claimant has the right to take to arbitration under Insurance Law (id.). Baldwin v Brooks (83 AD2d 85) illustrates the point. In Baldwin, a pedestrian, who was struck and injured by an automobile brought a personal injury action against the driver and the driver's father, the owner of the car. Prior to the personal injury action, the plaintiff brought a no-fault arbitration proceeding against the defendants' insurer and won on a causation issue, that the defendants' car caused his injuries. Then, the plaintiff brought the tort action against the driver and his father, and the plaintiff wanted to collaterally estoppel them on the causation issue. The court denied the request, however, because the driver and the owner of the car were not parties to the first action against their insurer; their insurer was the party. Again, this is because, [*6]unlike ordinary liability coverage, where insurer and insured are in privity, in no-fault the insurer's statutory obligation runs directly to the injured person and there is no link between the insured and the insurer sufficient to bind one to an adverse finding made in a proceeding involving the other.
To be sure, in the prior declaratory judgment action, in this case, for some unexplained reason, the motion court declared that plaintiff's default meant not only that the insurer, Nationwide, was not obligated to pay no-fault benefits, but also that Nationwide was not obligated "to afford any bodily injury coverage to [plaintiff] . . . [for] personal injury stemming from the alleged September 15, 2016 accident." The second part of that holding, however, — that Nationwide was not obligated to pay plaintiff coverage for any bodily injury damages arising from the subject accident — is irrelevant to whether claim preclusion applies to the current personal injury action. Defendants' rights to be defended and indemnified by Nationwide remained intact regardless of the outcome of the no-fault benefits dispute. In fact, as to defense and indemnification, an action by an insured seeking a declaratory judgment as to the scope of its liability insurer's promise to defend and indemnify the insured does not become a ripe controversy until a suit is filed against the insured; the mere threat of litigation, or the commencement of ancillary proceedings, is not sufficient (Solo Cup Co. v Federal Ins. Co., 619 F2d 1178, 1189 [7th Cir 1980], cert denied 449 US 1033 [1980]). Courts have gone as far as to hold that a declaratory judgment action is premature to the extent the "duty to indemnify must necessarily depend on the resolution of an issue that, if it arises, will be decided in the underlying action" (Statt v American Home Assur. Co., 191 AD2d 962, 963 [4th Dept 1993]; see Allstate Ins. Co. v Santiago, 98 AD2d 608 [1st Dept 1983] [employer's insurer's declaratory judgment action seeking to establish that employee, involved in accident with negligence-action-plaintiff while driving employer's vehicle, was operating vehicle without consent of employer was premature, because the issue should be determined in underlying negligence action, and therefore resolution of question was not appropriate by declaratory judgment]). This is particularly true here since, as discussed, Nationwide and its insureds (defendants driver/owner) were not in privity with regard to the prior action involving a statutorily mandated no-fault benefits dispute. Thus, it follows logically, that although defendants here were named as parties to the first action by their insurer, Nationwide, they did not participate in the no-fault benefits dispute; nor did Nationwide seek any relief against them. They had no adverse interest in the outcome.
Additionally, under the particular circumstances here, giving preclusive effect to a prior default determination on no-fault benefits, in a subsequent personal injury action would contravene the concept of fairness underlying the doctrine of res judicata. The primary purposes of res judicata are grounded in public policy and are to ensure finality, prevent vexatious litigation and promote judicial economy (see Matter of Hodes v Axelrod, 70 NY2d 364, 372 [1987]; Reilly v Reid, 45 NY2d at 28). However, unfairness may result if the doctrine is applied too harshly; thus "[i]n properly seeking to deny a litigant two days in court', courts must be careful not to deprive [the litigant] of one" (Reilly v Reilly, 45 NY2d 24, 28 [1978]). Important here is that the preclusive effect of the declaratory judgment in favor of Nationwide should be evaluated in the context that the causation issue —- whether an automobile accident caused plaintiff's injuries — was never decided because the prior action was determined on default, to which issue preclusion does not apply. Applying "issue" preclusion in this manner encourages litigants not to over-litigate seemingly minor issues — if a party defaults on what appears to be a minor issue that turns out to be important in a later suit, she has the opportunity to litigate that issue in the later suit. Yet, by applying claim preclusion to this case, we would in effect be saying that plaintiff is precluded from raising an issue that should have been litigated in the prior no-fault benefits action decided on default.
Finally, we recognize that the Second Department has ruled otherwise (see Albanez v [*7]Charles (134 AD3d 657 [2d Dept 2015]). We are not bound by the decision of the Second Department (see Mountain View Coach Lines v Storms, 102 AD2d 663, 665 [2d Dept 1984]). Of course, because stare decisis serves the important interests of stability in the law and predictability of decisions, we ordinarily follow the decisions of other departments unless we have good reason to disagree (see McKinney's Cons Laws of NY, Book 1, Statutes § 72[b]; see e.g. Church of St. Paul and St. Andrew v Barwick, 67 NY2d 510, 519 [1986]). In this case, departure from Albanez v Charles is indeed justified, because that court failed to apply "the same parties" requirement of claim preclusion articulated in Welsbach Electric Corp. (9 NY3d at 127) and Parker v Blauvelt Volunteer Fire Co., (93 NY2d at 347). As a result, Albanez v Charles' conclusion that claim preclusion applies in a personal injury action of a prior first-party, no-fault benefits action, where the plaintiff and the defendants were not adversaries in the prior litigation, and defendants were not in privity with the insurer in the prior litigation, is not supported. On the contrary, this case is analogous to this Court's holding in Amalgamated Bank v Helmsley-Spear, Inc. (109 AD3d 418, 419 [1st Dept 2013], affd 25 NY3d 1098 [2015]), which held that "intervenors cannot intervene by arguing that the default judgment has a res judicata effect on the supplemental proceeding and adversely affects their rights in that proceeding," because "[u]nder res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action," quoting Parker v Blauvelt Volunteer Fire Co., 93 NY2d at 347).
Accordingly, the order of the Supreme Court, Bronx County (John R. Higgitt, J.), entered September 20, 2019, which denied defendants' motion to dismiss the complaint, should be affirmed, without costs.
All concur.
Order, Supreme Court, Bronx County (John R. Higgitt, J.), entered September 20, 2019, affirmed, without costs.
Opinion by Renwick, J. All concur.
Acosta, P.J., Renwick, Webber, Gesmer, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 23, 2020
CLERK



Footnotes

Footnote 1:New York's no-fault scheme—contained in article 51 of the Insurance Law — requires owners of vehicles to carry insurance with $50,000 minimum limits, which covers basic economic loss, i.e., first-party benefits, on account of personal injury arising from the use or operation of a motor vehicle. Basic economic loss includes, among other things: (1) medical expenses; (2) lost earnings up to $2,000 per month for three years; and (3) out-of-pocket expenses up to $25 per day for one year (Insurance Law § 5102[a]).

Footnote 2:Article 51 of the Insurance Law, also known as the "No-Fault Law," applies to any cyclist, pedestrian, passengers, or driver injured by a motor vehicle in New York. The conditions that must be met to qualify for no-fault coverage include, among others: The accident occurred in New York and the injured party was the driver or passenger of the insured vehicle or a cyclist or pedestrian struck by or in contact with the motor vehicle (see Insurance Law § 5102(d)). The no-fault concept embodied in the Insurance Law modifies the common law system of reparation for personal injuries under tort law (Safeco Ins. Co. of Am. v Jamaica Water Supply Co., 83 AD2d 427, 431 [2d Dept 1981], affd 57 NY2d 994 [1982] ["[F]irst-party benefits are a form of compensation unknown at common law, resting on predicates independent of the fault or negligence of the injured party"] (id.).